**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Charles Robert Wright,<br><br>　　　　Defendant. | No. CR-21-01031-001-TUC-RM (MSA)<br><br>**ORDER** |

On December 10, 2021, the Government provided notice of its intent to call Homeland Security Investigations ("HSI") Special Agent ("SA") Bryn Elton as an expert witness who will testify regarding coded language used by drug trafficking and money laundering organizations. (Doc. 39.) Specifically, SA Elton is expected to testify that (1) "individuals engaged in illegal activities often use[] coded language in an attempt to sound inconspicuous, . . . to conceal their actual illicit activities, or to confuse those who may overhear the conversation(s)"; and (2) in this case, Defendant used coded language such as: "moving shit," "doing a paper run," "haystacks," "presents delivered, paper work picked up, NYC complete," and "other phrases used in drug trafficking and money laundering." (*Id.* at 2.) SA Elton's curriculum vitae states that he has worked in law enforcement since 2001 and has been an HSI SA investigating cross-border criminal activity since 2015. (Doc. 39-1.)

In his Motion to Preclude Government's Expert Witness, Defendant argues that the Court should preclude SA Elton from testifying as an expert witness because the

Government has not shown that the coded language at issue in this case is commonly used jargon, nor has the Government shown the reliability of SA Elton's methodology for interpreting the coded language. (Doc. 42.) The Government argues in Response that SA Elton is qualified to testify as an expert witness and that the language at issue in this case is commonly used by drug trafficking and money laundering organizations. (Doc. 50.) In his Reply, Defendant argues that the Government has failed to reveal how SA Elton came to the conclusion that the language at issue in this case is commonly used by drug trafficking and money laundering organizations. (Doc. 58 at 1-2.) Defendant further argues that the Government's Notice is lacking in specificity because it indicates SA Elton will testify about "other phrases," without specifying what those phrases are and whether they are commonly used terms. (*Id.* at 2.)

Admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. This rule requires the trial court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, 589 (1993). To do so, the court must assess "whether the reasoning or methodology underlying the testimony" is valid and "whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93. This gatekeeping function applies not only to expert testimony based on "scientific" knowledge but also to expert testimony based on "technical" and "other specialized" knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). Its purpose is to ensure "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that

characterizes the practice of an expert in the relevant field." *Id.* at 152.

The Ninth Circuit has held that a qualified law enforcement agent may testify to the interpretation of commonly used drug jargon. *United States v. Bailey*, 607 F.2d 237, 240 (9th Cir. 1979). But even a qualified agent may not testify to the interpretation of words and phrases encountered for the first time in the case at hand unless the Government establishes the reliability of the method that the agent "used to arrive at his interpretations of words he had never encountered before." *United States v. Hermanek*, 289 F.3d 1076, 1094 (9th Cir. 2002)

There appears to be no dispute that SA Elton is properly qualified to testify as an expert witness. However, the Court agrees with Defendant that the Government's Notice and Response does not provide sufficient information regarding the methodology that SA Elton used to determine the meaning of the coded language at issue in this case. Accordingly, to assist the Court in resolving Defendant's Motion, the Court will require the Government to submit an expert report or sworn declaration by SA Elton containing further information, as specified below.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Preclude Government's Expert Witness (Doc. 42) is **taken under advisement**.

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

**IT IS FURTHER ORDERED** that within **fourteen (14) days** of the date this Order is filed, the Government shall submit an expert report or sworn declaration by SA Elton that explains:

(1) the precise language about which SA Elton intends to testify;

(2) whether, and how, SA Elton recognized the language at issue as coded language commonly used by drug trafficking and money laundering organizations; and

(3) for any language that SA Elton was not familiar with prior to this case, the methodology that SA Elton used to determine the language's meaning.

Dated this 4th day of March, 2022.

_____
Honorable Rosemary Márquez
United States District Judge